[Crim. No. 3478. Second Dist., Div. Two. Oct. 30, 1941.]

THE PEOPLE, Respondent, v. VERNE JOHN SCHUNKE et al., Appellants.

Robert E. O'Neill for Appellants.

Earl Warren, Attorney General, and Gilbert F. Nelson, Deputy Attorney General, for Respondent.

WOOD, J.—Defendants were charged in count I of the information with the crime of robbery, in that they forcibly took from the person of Otto E. Sporrer the sum of $893 in cash and checks. In count II of the information defendant Nickel was charged with the violation of the Dangerous Weapons Control Law of 1923 [Stats. 1923, p. 695; Deering's Gen. Laws, 1937, Act 1970], as amended, in that he had in his possession a sawed off shot gun, he having theretofore been duly convicted of the crime of forgery on January 19, 1931, in the Superior Court of Los Angeles County. In count III defendant Schunke was accused of the violation of the Dangerous Weapons Control Law of 1923, as amended, in that he had in his possession an automatic pistol, he having theretofore been convicted of the crimes of robbery and burglary on March 30, 1934, in the Superior Court of Los Angeles County.

It was also charged that defendant Nickel had previously been convicted of the crime of burglary in the State of Texas

on March 15, 1927, and of the crimes of forgery and robbery on January 12, 1931, in the Superior Court of Los Angeles County. It was also charged that defendant Schunke had previously been convicted of the violation of the Dyer Act in the State of Utah on May 10, 1929, and of the crime of burglary in the State of North Dakota on July 5, 1932, and of the crime of robbery on December 18, 1934, in the Superior Court of Los Angeles County. Both defendants admitted the prior convictions charged in the information. The jury found both defendants guilty of robbery, the charge contained in count I. Defendant Schunke was found not guilty on count III. The jury failed to agree on count II and this count was dismissed. Both defendants were sentenced to the state penitentiary and were declared to be habitual criminals. Both defendants have appealed from the judgments and from the order denying a new trial.

It is now contended that prejudicial error was committed when the clerk read to the jury the charges contained in counts II and III, in which possession of dangerous weapons was charged against defendants and in which it was set forth that they had previously been convicted of the specific felonies mentioned in the two counts. As required by section 1025 of the Penal Code, the clerk refrained from reading to the jury that part of the information which contained allegations of previous convictions of the felonies which had been admitted by defendants. Defendants were on trial, not only on count I but also on counts II and III. Each of these counts contained two essential elements, the previous conviction of a felony and the possession of a dangerous weapon. It was necessary for the prosecution to establish both of these elements and it was also necessary for the jury to be informed of the issues which they were obligated to pass upon. The provisions of section 1025 were complied with when the clerk refrained from reading the allegations concerning the previous convictions which had been admitted. These provisions refer exclusively to cases in which previous convictions are alleged for the purpose of enabling the court to impose a greater punishment. They have no reference to cases in which the prior conviction is an essential element of the offense for which the accused is on trial. (*People* v. *Oppenheimer*, 156 Cal. 733 [106 Pac.

74].) We see no error in the conduct of the clerk in reading the information.

Defendant Schunke contends that the evidence is insufficient to justify his conviction and asserts that the evidence of his identification as a participant in the crimes is unsatisfactory. We find in the record, however, much evidence pointing to Schunke's guilt in addition to the testimony of the witnesses who observed the commission of the robbery.

In the evening of February 16, 1941, Reverend Otto Sporrer and three other priests were dining in the parish house in Santa Monica, having several persons as their guests. As they were all seated two robbers entered the room, placed a shot gun at the back of Reverend Sporrer and compelled him to open the safe. Defendant Nickel wore no mask and was easily identified. While defendant Nickel compelled Reverend Sporrer to open the safe defendant Schunke kept the others in the dining room covered with an automatic revolver which he held in his right hand. His left hand remained concealed in his pocket and one of the witnesses testified that, "when he backed through the kitchen he used his elbow to feel out the doorway, bumping into it slightly." It was stipulated that defendant Schunke's left hand was deformed and the jury was given an opportunity to examine it. At the time of the robbery the upper part of his face was covered by a cloth. Witnesses who had been present at the robbery testified that the robber with defendant Nickel wore a dark overcoat; that Schunke was "similar in appearance" to the robber; and that "his height, the slope of his forehead and his general body build are about the main things that resemble the man who accompanied Mr. Nickel."

Betty Strack testified that in the afternoon of the day of the robbery she went with Schunke to the residence of Nickel; that Nickel came out and had a conversation with Schunke at the car; that Schunke then told Nickel that they should go and "shoot craps" for awhile; that Schunke then took the witness to a theatre and Nickel followed in his car; that Schunke gave the witness the keys to his car, leaving her at the theatre and driving away with Nickel; that before leaving her he said that if he won anything at craps he would buy her a dress; that when he returned at about 7 o'clock

p. m. he told her he had made between $60 and $70 and could buy her two dresses; that during this time Schunke wore a "brownish green" overcoat. It was also shown in evidence that the day following the robbery defendant Schunke bought an automobile and paid over $200 in cash for it. When questioned by the officers Schunke denied that he was acquainted with defendant Nickel or that he had ever heard of him. Defendant Schunke was not sworn as a witness in his own defense.

The rule to be followed by an appellate court in passing upon the contention that the evidence is insufficient to justify the conviction is well established. We must assume in favor of the verdict the existence of every fact which the jury could have reasonably deduced from the evidence and then determine whether such facts are sufficient to support the verdict. If the circumstances reasonably justify the verdict it must not be disturbed because it could be argued that the circumstances also could be reasonably reconciled with the innocence of the accused. (*People* v. *Newland,* 15 Cal. (2d) 678 [104 Pac. (2d) 778].) When the circumstances established are measured by this rule it cannot be held that the verdict of the jury is lacking in evidentiary support.

The judgments and the order denying a new trial are affirmed.

Moore, P. J., and McComb, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied November 27, 1941.