[Crim. No. 21070. Sept. 8, 1980.]

THE PEOPLE, Plaintiff and Respondent, v.
ROBERT EDWARD HALL et al., Defendants and Appellants.

146

---

COUNSEL

Kyle Gee, under appointment by the Supreme Court, for Defendants and Appellants.

Quin Denvir, State Public Defender, and William Wesley Patton, Deputy State Public Defender, as Amici Curiae on behalf of Defendant and Appellant Hall.

Evelle J. Younger and George Deukmejian, Attorneys General, Jack R. Winkler and Robert H. Philibosian, Chief Assistant Attorneys General,

Edward P. O'Brien, Assistant Attorney General, Derald E. Granberg, Eugene W. Kaster, Robert R. Granucci, Ronald E. Niver and John H. Sugiyama, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

BIRD, C. J.—This court must decide whether the trial court's refusal to accept a criminal defendant's admission of a prior felony conviction was reversible error. A separate issue concerns the failure of a codefendant's attorney to move for severance of his client's trial.

I

Appellants, Robert Edward Hall and Stanley Edward Nichols, were charged by information with the joint commission of a robbery (Pen. Code, § 211).[1] Two additional robbery counts and three counts of ex-felon in possession of a concealable firearm were also filed against Hall (§ 12021). Both appellants were alleged to have used a firearm (§ 12022.5). They were jointly tried and convicted on all counts.

Two of the robbery charges involved a Jack-in-the-Box restaurant on San Pablo Avenue in Richmond. On August 8, 1977, two men entered that restaurant and conversed briefly with another customer, David Worley. One of the two men approached the counter and placed an order with Sharon Lee. When the order was brought to him, the man produced a gun. He demanded and received all the money from the cash register. The robber and his companion fled. Lee and Worley described the robber to the police as black, approximately six feet tall, wearing a black coat and black pants. Worley stated the man wore sandals and a straw hat but Lee indicated he wore no hat at all and that his hair was cut close to his head.

On August 10, 1977, a six-foot-tall black man, wearing a black shirt and a white straw hat with a black hat band, entered Omo's One Hour Martinizing on San Pablo Avenue to pick up some laundry. When Earl Anderson, the clerk on duty, went to look for the laundry, the man came up behind him and placed a gun at his side. After demanding and receiving money from the cash register, the robber directed Anderson,

---

[1]All references herein are to the Penal Code unless otherwise specified.

Anderson's wife Sandra, and Rosemary Klarnet to lie down. They complied and the robber fled through a side door into an adjoining parking lot.

At about the same time, Officer James Breuner parked his car in the lot next to Omo's and noticed two black men. One was wearing a tan shirt and light-colored pants and leaning against a light brown car. The other man was coming out of the side door of Omo's, wearing a black shirt and straw hat. Officer Breuner entered Omo's and learned from Anderson that the store had just been robbed by "two guys." The officer ran to the parking lot but the two men he had seen were gone. Meanwhile, Anderson saw a man he believed to be the robber wearing a straw hat and riding in the passenger seat of a gray Ford Falcon driven by a white blonde woman.[2]

Half an hour later and approximately a five-minute drive from Omo's, a black man, wearing dark clothing and a white straw hat, entered the Jack-in-the-Box on San Pablo. Sharon Lee, believing him to be the same man who had robbed her two days earlier, went to the back of the store with coemployee Loretta Young. Assistant Manager Steve Schlussel took Lee's place waiting on customers and ignored the fact that Young was calling to him. Upon receiving his order from Schlussel, the man displayed a gun and demanded money from the cash register.

A second man, wearing blue pants, a jacket and a hat ran to the back of the store and pointed a gun at Young and Lee. Five minutes later this man left through a side door while the robber went out the front door with the money.

Identification was the central issue at the trial. One of Hall's fingerprints was taken from a bottle found in a dumpster in a parking lot across the street from the restaurant on August 8th, the day of the first Jack-in-the-Box robbery.[3] Worley, the customer who was present during

---

[2]Some weeks later Anderson saw the Falcon with the same driver and passenger parked a few doors from Omo's. He reported the sighting and the license plate number to the police, but by the time someone came to investigate the car was gone.

[3]According to Officer Lewis Abramson, fourteen-year-old James Fortune told him a black man about six feet tall with a large natural, a dark striped shirt, and dark brown pants alighted from an orange Datsun B210 and threw a bottle-shaped bag into the dumpster shortly before the police began to arrive on August 8th. Abramson recovered the bottle. At trial, Fortune denied that he had given the officer any such information.

that robbery, could not identify Hall and Nichols and failed to identify the sandals worn by Hall when he was arrested. Lee identified Hall as the person who robbed her on the 8th and again on the 10th. She identified Nichols as the accomplice on the 10th but stated that he was not present on the 8th. Anderson's wife did not testify, and Schlussel could not identify appellants as the robbers of Jack-in-the-Box on August 10th. However, Young identified both Hall and Nichols as having committed that robbery. Anderson and Klarnet positively identified Hall as the robber of Omo's.

Nichols was not in any of several pretrial lineups; Hall was in the third. Sharon Lee did not choose anyone from the first two lineups, but identified Hall in the third. Officer Abramson testified that Lee told him after the second lineup that a man named Torrence looked like the robber but that she wasn't positive. At trial, Lee testified that she didn't recall that particular conversation with the officer.

Lee had also seen a photographic display which included Nichols and Torrence but not Hall. Lee said that Torrence looked very much like the person who had robbed her on both occasions but that she did not believe it was he. She failed to select Nichols' picture.

Officer Dick Tak testified that immediately following the August 10th robbery, Loretta Young was not at all certain of the principal robber's description. She said that she would not be able to identify him and failed to choose anyone during the lineups. After the third lineup, she did not return her identification card until she overheard Officer Oliver inquire about it with some other officers. At that point, she volunteered that she had it and turned it over to him in blank. She said she was not sure whether the robber was in the lineup, but after it was over she identified Hall.

Before the lineups, Omo's employees had seen a photographic display with Torrence and Nichols but not Hall. Rosemary Klarnet and Sandra Anderson stated that Torrence looked like the robber, and Mrs. Anderson thought that a person named Alexander looked like the robber. Earl Anderson did not make any identifications from the photographic display or from the first two lineups. However, he identified Hall at the third lineup. Sandra Anderson was 80 percent sure at the time of the second lineup that Torrence was the robber but she changed her mind the next day because he was too small. No evidence was introduced concerning her reaction to the third lineup.

Klarnet picked Torrence out of the second lineup, stating he looked like the robber but that it was not he. Because her view was blocked by an officer at the third lineup, Klarnet initially marked her identification card with a question mark next to the figure which corresponded to appellant Hall's position. Later, when she was more certain of her identification she was unable to change the mark on her card because her pen ran out of ink. The officer gave her a pen and she wrote that explanation on the card at the officer's direction.

At the trial, Hall did not testify. Ed Randolph, who had known him for 10 to 15 years, testified that he had hired Hall to take some trash from an Oakland bar that Randolph managed. Hall arrived at the bar on August 10th around noon and stayed until 3 or 3:30 p.m. when the bar's owner came to pay Hall for his work.

Nichols also presented an alibi defense. He, his wife, and his sisters-in-law Mackay and Bradley testified. According to these witnesses, Nichols was at home all morning on August 10th after he completed his night shift as an aircraft mechanic for World Airways. Three sisters-in-law arrived shortly after 11 a.m. and left shortly after noon. When Bradley picked up her baby about 12:30 p.m., Nichols was asleep upstairs. Mrs. Nichols spent the rest of the afternoon sewing. Nichols woke up between 4 and 5 p.m. and looked at the garment Mrs. Nichols was sewing for a wedding the next Saturday. A receipt introduced into evidence showed that Mrs. Nichols took the garment to the cleaners on August 11th. She testified that she knew her husband was home on the day before she took the finished garment to the cleaners because she remembered showing it to him at that time. Nichols spent the rest of the evening at his home leaving only to go to work at the Oakland Airport for his 11:15 p.m. shift. He borrowed a car to get there.

Nichols testified that after his arrest in late August, Officer Abramson told him he was suspected of being involved in the Jack-in-the-Box robberies on August 8th and 10th, and that he was under arrest for the latter robbery. Nichols stated that he was at home with his family on the 10th. He had visited a friend in Richmond on Wednesday, the 11th, and had had car trouble on that date. He had been given a ride to Oakland by a triple A employee who had towed the borrowed car to the owner's house.

Abramson testified that Nichols told him he had car trouble in Richmond on August 10th. Abramson believed Alexander, a friend of

Nichols', was the getaway driver at both the August 8th and 10th robberies and had thrown the bottle found in the dumpster on August 8th. He said he knew that Nichols and Alexander had been arrested together following an Oakland robbery, but did not know the outcome of that arrest. A certified copy of the dismissal of that case was later introduced into evidence. Records were also introduced showing that on the morning of August 10th Nichols got off work at 3:20 a.m. rather than 7:30 a.m. as Nichols had testified. Nichols then testified that since there were no buses at 3:20 a.m. he stayed at the plant's coffee shop until 7:30 and eventually got a ride with another worker who got off at that time.

At the time of trial, Hall offered to stipulate that he was an ex-felon and that he would be guilty of violating section 12021 if the jury found that he possessed a firearm during the commission of the robberies. With this offer to so stipulate, Hall moved to exclude from the jury's consideration any evidence of his prior convictions. The prosecutor refused to accept the stipulation. The trial court denied defendant's motion, as well as motions to delete reference to the nature of those convictions and to sever the section 12021 charge from the robberies. Invoking its discretion under section 352 of the Evidence Code, the court limited the prosecutor to proof of one of two prior robbery convictions and did not allow the use of the prior convictions for purposes of impeachment.[4]

The information which charged Hall with three counts of possession of a firearm by an ex-felon was read to the jury in its entirety. Also, an order of commitment for armed robbery was admitted into evidence and the jury was instructed that a prior felony conviction is an element of a section 12021 violation.

## II

The first question which this court must address is whether the trial court committed error when it informed the jury of Hall's prior

---

[4]Evidence Code section 352 provides as follows: "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (See also *People* v. *Beagle* (1972) 6 Cal.3d 441, 451-453 [99 Cal.Rptr. 313, 492 P.2d 1]; *People* v. *Morrison* (1977) 67 Cal.App.3d 425, 428 [136 Cal.Rptr. 650].)

felony conviction despite his willingness to stipulate that he had been convicted of a felony.

■ Under Evidence Code section 350 "[n]o evidence is admissible *except* relevant evidence." (Italics added.) Under this section, irrelevant evidence *must* be excluded and a trial court has no discretion to admit it. (*Fuentes* v. *Tucker* (1947) 31 Cal.2d 1, 7 [187 P.2d 752]; *People* v. *Slone* (1978) 76 Cal.App.3d 611, 631 [143 Cal.Rptr. 61].) (3) Relevant evidence is defined as evidence which has "any tendency in reason to prove or disprove any disputed fact that is of consequence to the...action." (Evid. Code, § 210.)

A fact that is "of consequence" to the prosecution's case is nevertheless not "disputed" within the meaning of Evidence Code section 210 simply because the accused has pleaded not guilty. (*Thompson* v. *The King* [1918] A.C. 221, 232, cited in *People* v. *Schader* (1969) 71 Cal. 2d 761, 775-776, fn. 13 [44 Cal.Rptr. 193, 401 P.2d 665].) If a fact is not genuinely disputed, evidence offered to prove that fact is irrelevant and inadmissible under Evidence Code sections 210 and 350 respectively. (See *People* v. *Thompson* (1980) 27 Cal.3d 303, 315 [165 Cal.Rptr. 289, 611 P.2d 883]; *People* v. *Thomas* (1978) 20 Cal.3d 457, 467 [143 Cal.Rptr. 215, 573 P.2d 433]; *People* v. *Antick* (1975) 15 Cal.3d 79, 93 [123 Cal.Rptr. 475, 539 P.2d 43]; Jefferson, Cal. Evidence Benchbook (1972) Special Problems Related to Relevancy, § 21.3, p. 264.).

■ Thus, if a defendant offers to admit the existence of an element of a charged offense, the prosecutor must accept that offer and refrain from introducing evidence of other crimes to prove that element to the jury. Ordinarily, the jury is informed that the specific element of the offense has been admitted by the defendant. (See e.g., *People* v. *Gonzales* (1968) 262 Cal.App.2d 286, 288-291 [68 Cal.Rptr. 578]; *People* v. *Gregg* (1968) 266 Cal.App.2d 389, 390-395 [71 Cal.Rptr. 920]; *People* v. *Souza* (1970) 11 Cal.App.3d 873, 877-878 [90 Cal.Rptr. 54]; *People* v. *Washington* (1979) 95 Cal.App.3d 488, 490-492 [157 Cal.Rptr. 58]. Cf. *People* v. *Guzman* (1975) 47 Cal.App.3d 380, 389-390 [121 Cal. Rptr. 69].)

There is one narrow exception to this rule of exclusion. If the facts to which the defendant has offered to stipulate retain some probative value, then evidence of such facts may be introduced. For example, if evidence remains relevant to an issue not covered by the stipulation or admission, the evidence is admissible on the remaining issue. (See e.g.,

*People* v. *Maler* (1972) 23 Cal.App.3d 973, 978-980 [100 Cal.Rptr. 650]; *Martin* v. *Miqueu* (1940) 37 Cal.App.2d 133, 136 [98 P.2d 816].) If the stipulation would force the prosecution to elect between theories of guilt, or would hamper a coherent presentation of the evidence on the remaining issues, evidence of the stipulated facts is admissible. (*People* v. *McClellan* (1969) 71 Cal.2d 793, 802 [80 Cal. Rptr. 31, 457 P.2d 871].) Further, if a stipulation or admission is "ambiguous in form or limited in scope or [if] during the trial of a case, a party seeks to deprive his opponent of the legitimate force and effect of material evidence...," the evidence retains some probative value and is admissible. (*Fuentes* v. *Tucker, supra,* 31 Cal.2d at p. 7.)

In the context of these rules, Hall's offer to stipulate that he had been convicted of a prior felony raises two issues. ■ First, could Hall prevent the jury from learning of the *nature* of any prior felony conviction? Section 12021 makes it a crime for a person who has been convicted of *any* felony to possess a concealable firearm.[5] The result is not affected by the nature of the felony. (See *People* v. *Billon* (1968) 266 Cal.App.2d 537, 539 [72 Cal.Rptr. 198].) Nor can omission of the nature of the felony "impair the effectiveness of the prosecutor's case and foreclose his options to obtain a conviction under differing theories." (*People* v. *Robles* (1970) 2 Cal.3d 205, 213 [85 Cal.Rptr. 166, 466 P.2d 710]; see also *People* v. *McClellan, supra,* 71 Cal.2d 793, 800-803.) Accordingly, proof of the nature of the felony was irrelevant and therefore inadmissible.

The second issue is whether Hall was entitled to keep the jury from learning that he had been convicted of *any* felony, even though his status as a felon was an element of the section 12021 charge. He points to the rule requiring the prosecutor in most cases to present only the stipulated fact rather than affirmative evidence of the fact which a defendant is willing to admit. (See, e.g., *People* v. *Washington, supra,* 95 Cal.App.3d 488; *People* v. *Chacon* (1968) 69 Cal.2d 765, 777, 778 [73 Cal.Rptr. 10, 447 P.2d 106].) By analogy, Hall argues that to avoid undue prejudice in this case the jury should not be informed that one of

---

[5]Section 12021, subdivision (a) provides that: "Any person who has been convicted of a felony under the laws of the United States, of the State of California, or any other state, government, or country, or who is addicted to the use of any narcotic drug, who owns or has in his possession or under his custody or control any pistol, revolver, or other firearm capable of being concealed upon the person is guilty of a public offense, and shall be punishable by imprisonment in the state prison, or in a county jail not exceeding one year or by a fine not exceeding five hundred dollars ($500), or by both."

the elements of section 12021 is the fact of ex-felon status. On that theory, the jury would learn only that some unidentified portions of the case had been resolved by stipulation, and that the issue that the jury had to decide was whether Hall had possessed a concealable firearm.

Once a defendant charged with violating section 12021 admits ex-felon status, the only remaining issue is whether the accused possessed a concealable firearm. Proof of possession is not logically related to whether a person has been convicted of a felony, unless it is assumed that ex-felons are more likely than others to illegally possess a gun. However, the Evidence Code precludes the prosecutor from introducing *any* evidence solely to show criminal disposition. (Evid. Code, § 1101, subd. (a).)

The prosecution contends, however, that failure to inform the jury that ex-felon status is an element of section 12021 will unfairly hamper the ability to convict because "to ask 'a jury to find someone guilty of possession of a handgun is considerably different than [*sic*] asking them to find a felon guilty of possession of a handgun.'" (*People v. Sherren* (1979) 89 Cal.App.3d 752, 759 [152 Cal.Rptr. 828].) Theoretically the jury may rebel and exercise its "naked power" to acquit because the jury might not believe that possessing a concealable firearm should be criminal. (Cf. *People v. Powell* (1949) 34 Cal.2d 196 [208 P.2d 974]; *People v. Gottman* (1976) 64 Cal.App.3d 775 [134 Cal.Rptr. 834].)

*People v. Piper* (1980) 103 Cal.App.3d 102 [162 Cal.Rptr. 833], followed this reasoning, on the theory that "[p]ossession of a concealable weapon is not per se illegal; if the jury is not allowed to see the whole picture, jurors may be baffled at being asked to determine guilt on a finding of possession where they may be well aware that mere possession is not an offense." (*Id.*, at p. 109.)[6]

This argument is unpersuasive for several reasons. Instructions can be framed in such a manner that the potentially prejudicial prior conviction is not mentioned to the jury yet the jury can be informed that possession of a concealable firearm is not criminal under all

---

[6]Any person who knowingly carries a concealed firearm, however, is guilty of a misdemeanor, unless he has obtained a license. (See Pen. Code, § 12025; CALJIC No. 16.460 (4th ed. 1979).)

circumstances.[7] Also, the danger of verdict nullification could have been avoided in this case. Since Hall offered to stipulate that if he were found to have possessed a firearm during the robberies he would be guilty of the section 12021 charges, his concession included the fact of the firearm's concealability. The jury in this case was asked to find whether Hall had "used" a firearm within the meaning of section 12022.5. Under these facts if Hall were found to have "used" a gun, he must also have possessed it. If the prosecutor had been concerned that a jury might not convict solely because it thought mere possession of a concealable firearm should not be criminal, he could have agreed to permit the trial court to avoid mentioning the section 12021 charge at all and to simply enter judgment by stipulation on that charge if the section 12022.5 allegations were found true by the jury.

This court is persuaded by the reasoning of *People* v. *Sherren, supra,* 89 Cal.App.3d at pages 756-757, that the willingness of a defendant to admit a prior felony conviction in the context of a section 12021 trial is logically indistinguishable from cases permitting an accused to admit a prior petty theft while on trial for felony petty theft with a prior conviction (see § 666). In the latter case, a petty theft may be charged as a felony if a defendant has been previously convicted of one of several

---

[7]For example, CALJIC No. 12.40 (4th ed. 1979) can be modified in relevant part as follows:

Every person who, under certain circumstances, owns or has in his possession or under his custody or control any pistol, revolver, or other firearm capable of being concealed upon the person, is guilty of violation of Section 12021 of the Penal Code.

In order to prove the commission of such crime, each of the following elements must be proved:

[1. That such person [owned] [had in his possession or under his control a _____,]

[1. That such person exercised control or had the right to exercise control over a _____,]

2. That such person had knowledge of the presence of said firearm,

3. That said _____ was capable of being concealed upon the person, and
    (firearm)

4. One additional element must be proved. In this case, proof of this element has been stipulated to and should not be considered by you. If you find that each of the first three enumerated elements has been proved, you shall return a verdict of "guilty."

To prevent the jury from inadvertently learning of the prior felony conviction, the defense may wish to waive the reading of the information. (*People* v. *Herrera* (1962) 209 Cal.App.2d 748, 752 [26 Cal.Rptr. 409].) Similarly, the verdict forms should reflect that the defendant is or is not guilty as charged in the accusatory pleading of violating Penal Code section 12021, without referring to the prior conviction. Any irregularity that may result therefrom will be deemed waived. (See *People* v. *Fairchild* (1967) 254 Cal.App.2d 831, 838 [62 Cal.Rptr. 535]; *People* v. *Fisher* (1948) 86 Cal.App.2d 24, 31 [194 P.2d 116]. See also §§ 1258, 1404.)

enumerated crimes. If the defendant admits the prior conviction, the jury does not learn that it is part of the present petty theft charge. (See *People* v. *Gallinger* (1963) 212 Cal.App.2d 851 [28 Cal.Rptr. 472].) A valid distinction cannot be drawn between the felony petty theft situation and the present case. In each instance, the prior is an essential component of the felony. Furthermore, there is no indication that because petty theft is a misdemeanor triable in municipal court, jurors would be more likely to exercise their "naked power" to acquit an accused of the *felony* charge of violating section 666.

Finally, *People* v. *Rollo* (1977) 20 Cal.3d 109 [141 Cal.Rptr. 177, 569 P.2d 771] teaches us that "it is highly unlikely that a jury which is advised only that the defendant has been convicted of 'a felony' will let the matter rest. Normal human curiosity will inevitably lead to brisk speculation on the nature of that conviction...." (*Id.*, at p. 119.) In view of the court's holding today that the *nature* of a prior felony conviction is irrelevant in a section 12021 trial, the court cannot accept the prosecution's proffered solution to the apparent dilemma posed by *Rollo.* To the contrary, only if the nature and the fact of the prior conviction are barred will a defendant cease to be "unfairly deprived...of the protection which the court had properly accorded him...under *People* v. *Beagle* [(1972) 6 Cal.3d 441 (99 Cal.Rptr. 313, 492 P.2d 1)]...." (*People* v. *Morrison, supra,* 67 Cal.App.3d at p. 428.)

██  This court has no choice but to hold that in a prosecution for violating section 12021 the element of a prior conviction of a felony may not be given to a jury if the accused stipulates to it. This rule applies unless the state can clearly demonstrate that its application will *legitimately* impair the prosecutor's case or preclude presentation of alternate theories of guilt.[8] No opinion is expressed on the application of this rule to any other section of the Penal Code. The rule is compelled

---

[8]The following cases are disapproved to the extent that they may be inconsistent with the principles announced herein: *People* v. *Forrester* (1931) 116 Cal.App. 240 [2 P.2d 558]; *People* v. *McFarlan* (1932) 126 Cal.App. 777 [14 P.2d 1066]; *People* v. *Schunke* (1941) 47 Cal.App.2d 542 [118 P.2d 314]; *People* v. *Hudgins* (1943) 59 Cal.App.2d 175 [138 P.2d 311]; *People* v. *Israel* (1949) 91 Cal.App.2d 773 [206 P.2d 62]; *People* v. *Domenico* (1953) 121 Cal.App.2d 124 [263 P.2d 122]; *People* v. *Garrow* (1955) 130 Cal.App.2d 75 [278 P.2d 475]; *People* v. *Jackson* (1959) 53 Cal.2d 89 [346 P.2d 389]; *People* v. *Davenport* (1962) 210 Cal.App.2d 335 [26 Cal.Rptr. 735]; *People* v. *Gallinger, supra,* 212 Cal.App.2d 851; *People* v. *Faulkner* (1972) 28 Cal.App.3d 384 [104 Cal.Rptr. 625]; *People* v. *Morrison, supra,* 67 Cal.App.3d 425; *People* v. *Black* (1979) 96 Cal.App.3d 846 [158 Cal.Rptr. 449]; *People* v. *Piper, supra,* 103 Cal.App.3d 102; *People* v. *Goss* (1980) 105 Cal.App.3d 542 [166 Cal.Rptr. 1].

by the facts before this court so as to avoid any prejudice which might result from informing the jury that appellant had been convicted of a felony. ■ ■■ ■ (See, e.g., *People v. Beagle, supra*, 6 Cal.3d at pp. 451-454.)[9]

■ The next question this court must address is whether the admission of Hall's prior conviction for armed robbery was so prejudicial as to require reversal. At trial, Earl Anderson and Rosemary Klarnet positively identified Hall as a robber of Omo's on August 8th. They also identified him at a pretrial lineup. Sharon Lee identified Hall as the principal robber of the Jack-in-the-Box on August 8th and 10th. Loretta Young identified Hall as the principal robber on August 10th. Both

---

[9]For future guidance, the court notes that a stipulation such as the one offered here shares several key characteristics with the admission of a prior conviction alleged for enhancement purposes (see, e.g., *In re Yurko* (1974) 10 Cal.3d 857 [112 Cal.Rptr. 513, 519 P.2d 516]), and with the submission of a case for decision on the basis of a preliminary hearing transcript with reservation of the rights to testify, to present additional evidence, and to cross-examine witnesses. (See, e.g., *Bunnell v. Superior Court* (1975) 13 Cal.3d 592 [119 Cal.Rptr. 302, 531 P.2d 1086].) Such a stipulation relieves the prosecution of the burden of proving the existence of a valid prior conviction beyond a reasonable doubt. (Cf., *In re Yurko, supra*, 10 Cal.3d at p. 862.) It involves the partial waiver of significant constitutional rights. (Cf., *id.*, at p. 863 and fn. 5.)

As this court observed of partial submissions in *Bunnell v. Superior Court, supra*, "the objectives of [*Boykin-Tahl*] requirements, i.e., assurance that the defendant is aware of his basic constitutional rights, that his waiver is both voluntary and intelligent, and that his decision to waive these rights is made with an understanding of the consequences thereof, are no less important when the defendant surrenders all or substantially all of those rights...[but] contests his guilt by reserving the right to present additional evidence or to present legal argument in defense of the charge." (*Id.*, at p. 604; see also *Boykin v. Alabama* (1969) 395 U.S. 238 [23 L.Ed.2d 274, 89 S.Ct. 1709]; *In re Tahl* (1969) 1 Cal.3d 122 [81 Cal.Rptr. 577, 460 P.2d 449].) That observation is equally appropriate where, as here, the accused concedes the status element of a section 12021 charge. Whether it may also apply to other factual stipulations the court need not, and does not, decide today. (See, e.g., *People v. Chasco* (1969) 276 Cal.App.2d 271, 275-276 [80 Cal.Rptr. 667]; *People v. McCoy* (1974) 40 Cal.App.3d 854, 859-860 [115 Cal.Rptr. 559]; *People v. Hall* (1979) 95 Cal.App.3d 299, 315-316 [157 Cal.Rptr. 107].)

It is true that the decision to stipulate to the ex-felon status is a tactical one. The same can be said, however, of the decisions to plead guilty, to submit a case on the preliminary hearing transcript, or to admit prior convictions alleged for enhancement purposes. Yet *Boykin-Tahl* protections apply to such decisions. (But see *People v. Fisk* (1975) 50 Cal.App.3d 364, 371 [123 Cal.Rptr. 414].)

Therefore, trial courts in the future would be well-advised to assure the record adequately reflects the fact that a defendant is advised of any constitutional rights waived when stipulating to the status of an ex-felon. He should be informed as to the nature and the consequences of the stipulation. Such a requirement is already in use in cases which involve the admission of prior felony convictions. (Cf. *In re Tahl, supra*, 1 Cal.3d at p. 133, fn. 6.) Therefore, the practice endorsed today should not unduly burden the judicial process.

women selected Hall at a pretrial lineup. Hall's fingerprints were found on a bottle in a trash bin near the Jack-in-the-Box shortly after the August 8th robbery. The modus operandi used in all three robberies, the similarity of the witnesses' descriptions of the robber's physical characteristics, and the close proximity in time and location of all three robberies lend credence to the witnesses' identifications of Hall.

Hall's alibi witness for the August 10th robbery was unable to verify that the events he described occurred on the 10th. Based on this particular record, it cannot be said that there is a reasonable probability that the jury would have reached a different result if the error in admitting the evidence of the prior conviction had not occurred. (See *People v. Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].)

## III

Appellant Nichols contends that he was denied the effective assistance of counsel as a result of his trial attorney's failure to move for a separate trial because of his ignorance of the law of severance. Although the record before this court suggests that a motion for severance might well have been meritorious and within the duty of counsel to make, the record does not sufficiently "illuminate the basis for the... omission[]..." of such a motion so as to compel reversal of the conviction. (*People v. Pope* (1979) 23 Cal.3d 412, 426 [152 Cal.Rptr. 732, 590 P.2d 859].)

Counsel's comments can be interpreted as indicating that he misunderstood the law of severance. However, they also suggest that counsel knew the law since he indicated that he decided to forgo a severance motion after he had discussed the matter with another attorney. This conflict in the record can only be resolved at an evidentiary hearing. Accordingly, affirmance of the conviction is without prejudice to any writ of habeas corpus which might be filed in the trial court.

## IV

Appellant Nichols also contends that the trial court committed prejudicial error in refusing to give his requested instructions concerning proof of identity beyond a reasonable doubt.[10] ▇ Under the case

---

[10]Nichols' proposed instructions 5 and 6 are identical to those set out in full as instructions 1 and 4 in *People v. Guzman, supra*, 47 Cal.App.3d at pages 386-387, footnote 1.

law, it is error to refuse to give an instruction requested by a defendant which "directs attention to evidence from...which a reasonable doubt of guilt could be engendered." (*People* v. *Sears* (1970) 2 Cal.3d 180, 190 [84 Cal.Rptr. 711, 465 P.2d 847].) This applies with equal force to a refusal to give a requested instruction which deals with identification in the context of reasonable doubt. (*People* v. *Guzman, supra*, 47 Cal. App.3d at p. 387; *People* v. *Roberts* (1967) 256 Cal.App.2d 488, 492-494 [64 Cal.Rptr. 70].)

Nichols' proposed instruction No. 5 was identical to one of the instructions which was found to be too long and argumentative in *Guzman*. (See *People* v. *Guzman, supra*, 47 Cal.App.3d at p. 387.) Further, some of the factors highlighted by the instruction have no application to the present case.[11] Although the trial court did not err in refusing to give the instruction as written, it should not have refused to tailor the instruction to the facts of this case. However, this error was not prejudicial since the trial court did read to the jury CALJIC No. 2.91,[12] as modified at Nichols' request, and CALJIC No. 2.20.[13] In the future,

---

[11]For example, the visibility afforded by lighting conditions was not an issue in this case but was in *Guzman*. Similarly, since no evidence was presented that Nichols had been identified from a lineup, no comment on the relative reliability of lineups was warranted in this case.

[12]CALJIC No. 2.91 (3d ed. 1970) as modified by the trial court reads as follows: "The burden is on the State to prove beyond a reasonable doubt that the defendant is the person who committed the offense with which he is charged. It is not necessary for the defendant to prove that another person may have committed the crime, nor is it the burden of the defendant to prove his innocence. You must be satisfied beyond a reasonable doubt of the accuracy of the identification of defendant as the person who committed the offense before you may convict him. If, from the circumstances of the identification, you have a reasonable doubt whether the defendant was the person who committed the offense, you must give the defendant the benefit of that doubt and find him not guilty."

Nichols' proposed instruction No. 6 reads: "You are instructed that the identity of the defendant as the person who committed the crime is an element of every crime. Therefore, the burden is on the state to prove beyond a reasonable doubt not only that the crime alleged was committed, but also that the defendant was the one who committed it. You must be satisfied beyond a reasonable doubt of the accuracy of the witness' identification of the defendant.

"In this regard, you are instructed that it is not necessary for the defendants to prove that another person may have committed the crime, nor is it the burden of the defendant to prove his innocence. If facts and circumstances have been introduced into evidence which raise a reasonable doubt as to whether the defendant was the person who committed the crime charged, then you should find the defendant not guilty of the offense."

[13]As given, CALJIC No. 2.20 (3d ed. 1970) read: "Every person who testifies under oath is a witness. You are the sole and exclusive judges of the credibility of the witnesses in this case.

"In determining the credibility of a witness you may consider any matter that has a

the trial courts should consider and give appropriate instructions involving reasonable doubt and eyewitness identification. (See *People* v. *Sears, supra*, 2 Cal.3d at p. 190.)

V

Although the trial court committed error when it allowed evidence of appellant Hall's prior felony conviction to be presented to the jury, the error was not prejudicial. Further, the failure of Nichols' counsel to move for a severance caused by his counsel's lack of knowledge of that area of the law may have amounted to ineffective assistance of counsel. This will have to be determined at a future habeas corpus proceeding. The judgments of conviction are affirmed.

Tobriner, J., Mosk, J., Manuel, J., and Newman, J., concurred.

Richardson, J., concurred in the result.

Respondent's petition for a rehearing was denied October 8, 1980.

---

tendency in reason to prove or disprove the truthfulness of his testimony, including but not limited to the following:

"His demeanor while testifying and the manner in which he testifies;

"The character of his testimony;

"The extent of his capacity to perceive, to recollect, or to communicate any matter about which he testifies;

"The extent of his opportunity to perceive any matter about which he testifies;

"The existence or nonexistence of a bias, interest, or other motive;

"A statement previously made by him that is consistent with his testimony;

"A statement made by him that is inconsistent with any part of his testimony;

"The existence or nonexistence of any fact testified to by him;

"His attitude toward the action in which he testifies or toward the giving of testimony."