[No. A060985. First Dist., Div. One. July 21, 1994.]

THE PEOPLE, Plaintiff and Respondent, v.
GENNARO WILLIAM GAGLIONE, Defendant and Appellant.

**[Opinion certified for partial publication.*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts III, IV and V.

1292

**COUNSEL**

Melissa W. Johnson, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Ronald E.

Niver and Bruce Ortega, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**DOSSEE, J.**—Defendant was convicted in a jury trial of committing a lewd act upon a child under 14 (Pen. Code, § 288, subd. (a)). The jury also found defendant was a stranger to the victim so as to make him ineligible for probation (Pen. Code, § 1203.066, subd. (a)(3)).

In a bifurcated proceeding the trial court found the allegations of prior convictions to be true so as to make defendant ineligible for probation (Pen. Code, §§ 1203, subd. (e)(5), 1203.066, subd. (a)(5)) and to subject him to a mandatory 15-to-life sentence (Pen. Code, § 667.51, subd. (d)).

Defendant was sentenced to prison for 15 years to life and was ordered to pay a restitution fine of $10,000. He appeals.

### FACTS

On April 29, 1992, five-year-old Angela F. was playing outside the apartment of her babysitter, Barbara Buzzard, when a man approached her and asked her if she would like to earn some money by helping him pick up some "green things." He then led Angela into a nearby closet containing the utility meters for the apartment complex. The man closed the door, leaving it only slightly ajar, and then told Angela to touch him—first on his shoulder and then between his legs. Angela did so.

Meanwhile, Ms. Buzzard's three-year-old child had reported to her mother that Angela had gone with a man to get Ninja Turtles. Ms. Buzzard then followed the child to the utility closet. When she opened the door she found Angela on her knees picking up green tabs from the meters. A man was standing in the closet, too. He said, "She [is] helping [me]." He was dressed in a short-sleeved plaid shirt and tie and had a briefcase. She assumed he was the meter reader. He did not seem flustered or surprised, nor did he seem to be trying to compose himself. Angela did not seem disturbed. Ms. Buzzard did not believe anything was wrong. Nevertheless, after ushering the children into the apartment she watched the man get into a small tan hatchback car and drive off. She thought it odd that his car had been parked in the stall assigned to Angela's parents.

Defendant's car is a beige Ford Escort. Ms. Buzzard testified that the car she had seen looked similar to a photograph of defendant's car. Ms. Buzzard

described the man to police as having short, sandy-blond hair and glasses. A few days later she selected defendant's photograph from a photographic lineup. She also identified defendant at trial.

*Defense*

Defendant presented no evidence.[1] Defense counsel primarily argued to the jury that Ms. Buzzard's identification of him as the perpetrator was mistaken. He also argued that Angela's testimony should be discounted because children are suggestible.

## I. *Lewd Act*

Penal Code section 288, subdivision (a), makes punishable "any lewd or lascivious act . . . upon or with the body, or any part of member thereof, of a child under the age of 14 years, with the intent of arousing, appealing to, or gratifying the lust or passions or sexual desires of [the perpetrator] or of the child . . . ."

The jury was instructed pursuant to CALJIC No. 10.41 that "[a] lewd or lascivious act is defined as any touching of the body of a person under the age of fourteen years with the specific intent to arouse . . . ."[2]

In addition, at the request of the prosecutor, the jury was instructed: "Where a person instructs a child under the age of 14 to touch such person,

---

[1]The trial court ruled before trial that in the event defendant testified he could be impeached with his six prior convictions for oral copulation and kidnapping.

[2]The full text of CALJIC No. 10.41 is as follows:

"[Defendant is accused in [Count[s] _____ of] the information of having committed the crime of lewd act with child, a violation of Section 288(a) of the Penal Code.]

"Every person who willfully and lewdly commits any lewd or lascivious act upon or with the body, or any part or member thereof, of a child under the age of fourteen years, with the specific intent of arousing, appealing to, or gratifying the lust or passions or sexual desires of such person or of such child, is guilty of the crime of committing a lewd or lascivious act upon the body of a child in violation of Section 288(a) of the Penal Code.

"A lewd or lascivious act is defined as any touching of the body of a person under the age of fourteen years with the specific intent to arouse, appeal to, or gratify the sexual desires of either party.

"To constitute a lewd or lascivious act it is not necessary that the bare skin be touched. The touching may be through the clothing of the child.

"[The law does not require as an essential element of the crime that the lust, passions or sexual desires of either of such persons be actually aroused, appealed to, or gratified.]

"[It is no defense to this charge that a child under the age of fourteen years may have consented to the alleged lewd or lascivious act.]

"In order to prove the crime, each of the following elements must be proved:

"1.   A person committed a lewd or lascivious act upon the body of a child,

"2.   The child was under fourteen years of age, and

"3.   Such act was committed with the specific intent to arouse, appeal to or gratify the lust, passions or sexual desires of such person or of the child."

and that person has the specific intent to arouse, appeal to or gratify the sexual desires of either party, such person may be guilty of a lewd or lascivious act in violation of section 288a. No touching of the person—child by the person is required."

Defendant raises two claims of error pertaining to these instructions.

### A. *Any Touching*

Defendant first argues that CALJIC No. 10.41 is an erroneous statement of the law; that an innocuous touching, such as Angela's touching of defendant's shoulder, will not suffice for purposes of Penal Code section 288, even with the requisite specific intent. The argument has merit.

It has long been held that a "lewd or lascivious act" within the meaning of section 288 is not confined to genital touching. (*People* v. *O'Connor* (1992) 8 Cal.App.4th 941, 947 [10 Cal.Rptr.2d 530]; *People* v. *Dontanville* (1970) 10 Cal.App.3d 783, 795-796 [89 Cal.Rptr. 172]; *People* v. *Ash* (1945) 70 Cal.App.2d 583, 584 [161 P.2d 415].) Nevertheless, the touching must be lewd. In *People* v. *Webb* (1958) 158 Cal.App.2d 537 [323 P.2d 141], the defendant, the school custodian, put his arm on the victim's shoulder and led him to a bungalow, where he forced the child to commit oral copulation. The court held that the act of placing his arm on the child's shoulder did not qualify as a lewd act: "Regardless of any intent which defendant might have had when he put his arm around the shoulder of the boy on their way to the bungalow, that act does not come within the meaning of 'lewd' or 'lascivious.' Placing one's arm around the shoulder of a boy under the circumstances present in this case cannot be said to be lustful, immoral, seductive or degrading. . . . It is inconceivable that any court would convict a man of a violation of section 288 upon the mere proof of an act such as this." (*Id.*, at p. 542.) (Hence the court held the only lewd act was the oral copulation and the defendant could not be separately punished under both Penal Code section 288 and section 288a.)

More recently, in *People* v. *Wallace* (1992) 11 Cal.App.4th 568 [14 Cal.Rptr.2d 67], the court directly addressed the language of the CALJIC instruction. The court repudiated dicta in several previous cases that any touching, even innocuous touching, if coupled with the requisite intent, is sufficient to constitute a lewd or lascivious act. Instead, the court held the touching must be a sexual act. "Section 288 mandates the commission of a lewd or lascivious act upon or with the body of the victim, separate and apart from the intent of the perpetrator. If this were not the law a defendant could be convicted for his or her thoughts, regardless of his or her deeds." (11 Cal.App.4th at pp. 578-579.)

Accordingly, the court held the CALJIC definition of a lewd or lascivious act to be erroneous. The *Wallace* court suggested that "lewd or lascivious act" be defined as "any touching of the body of a child which to an *objectively reasonable person* is sexually indecent or tends to arouse sexual desire." (11 Cal.App.4th at p. 579.) The *Wallace* court reasoned: "The application of an objective standard to determine the commission of a lewd or lascivious sexual act is consistent with . . . the general principle that a mere intention of the accused to commit a crime or his belief that he is committing a crime, does not give rise to criminal liability. Apart from the mens rea, there must be some act or conduct in violation of law which itself is socially harmful. [Citations.]" (*Id.*, at pp. 579-580.)

Because the victims in *Wallace* were 15, the applicable statute was Penal Code section 288, subdivision (c), and the jury instruction given in that case was CALJIC No. 10.42.5 which contains language identical to CALJIC No. 10.41 that "any touching" qualifies as a lewd or lascivious act. In *People v. Self* (1993) 12 Cal.App.4th 1222, 1226 [16 Cal.Rptr.2d 67], the court found the reasoning of *Wallace* to be sound and held CALJIC No. 10.41 to be equally erroneous. "[CALJIC No. 10.41] improperly defined a lewd or lascivious act as 'any touching' with the required intent, and [it] did not provide adequate guidance for determining whether a touching constituted a violation of section 288, subdivision (a) . . . ."[3] (See also *People v. Filson* (1994) 22 Cal.App.4th 1841, 1852 [28 Cal.Rptr.2d 335].)

Based on the authority of *Wallace* and *Self*, we conclude that CALJIC No. 10.41 given in the present case was erroneous. Because the error eliminated an essential element of the crime charged, the error must be evaluated under the *Chapman* "beyond a reasonable doubt" standard. (*People v. Self, supra*, 12 Cal.App.4th at pp. 1226-1227; *People v. Wallace, supra*, 11 Cal.App.4th at p. 580.) We conclude the error here was harmless beyond a reasonable doubt.

Although the victim testified to two acts of touching—one on the shoulder and one on the genitals—the district attorney in both her opening statement and closing argument relied exclusively upon the latter as the lewd act forming the basis for the criminal charge. The district attorney made no suggestion that the touch on the shoulder was sufficient. The case therefore stands in contrast to *People v. Wallace, supra*, 11 Cal.App.4th at p. 580, where the district attorney argued that any touching however innocuous, such as brushing a child's hair or touching a child's arm, would satisfy the statute. Here, there was nothing in the prosecution's argument to mislead the jury as to what constituted the lewd act.

---

[3]CALJIC Nos. 10.41 and 10.42.5 were revised in 1993 to provide alternative language pursuant to *Wallace*.

Moreover, defendant primarily relied upon the defense of mistaken identity. He did not argue the conduct was innocuous or noncriminal. Secondarily, defendant argued that Angela's testimony should not be believed and thus that there was inadequate proof that anything happened in the closet. But even in making this argument defense counsel acknowledged that the act he was accused of was telling Angela to touch him "in . . . a private place." The evidence, then, was such that if defendant was to be found guilty at all he would be found guilty of committing a sexual act in violation of Penal Code section 288, subdivision (a). The instructional error was harmless beyond a reasonable doubt. (See *People* v. *Self, supra,* 12 Cal.App.4th at p. 1227.)

### B.  *Instruction to Touch*

In *People* v. *Austin* (1980) 111 Cal.App.3d 110 [168 Cal.Rptr. 401], the defendant did not personally touch the victim; instead he ordered the victim to pull down her pants. The court held that the touching required by Penal Code section 288 could be done by the child on her own person if it was done at the instigation of a person who had the required intent. In reaching this conclusion, the court reasoned that the child victim was the innocent agent of the perpetrator, who, as principal, was responsible for the acts of his agent. (111 Cal.App.3d at pp. 114-116.)

The *Austin* decision has been followed in several cases in which either the victim touched his or her own body or the victim was touched by a third party—at the instigation of the defendant.[4] (*People* v. *Mickle* (1991) 54 Cal.3d 140, 175-176 [284 Cal.Rptr. 511, 814 P.2d 290] [defendant compelled the child to disrobe]; *People* v. *Wallace, supra,* 11 Cal.App.4th 568 [girls touched themselves and were touched by their boyfriends at the urging of defendant]; *People* v. *Meacham* (1984) 152 Cal.App.3d 142, 152-154 [199 Cal.Rptr. 586] [victim touched own genitals on order from defendant].)[5]

Most recently in *People* v. *Imler* (1992) 9 Cal.App.4th 1178 [11 Cal.Rptr.2d 915], the defendant was convicted of an *attempted* violation of Penal Code section 288 after he ordered the victim over the telephone to

---

[4]In all of the cited cases the touching was upon the body of the victim. In the present case, the touching was upon the body of defendant. Yet Penal Code section 288 outlaws any lewd act "upon *or with* the body, or any part or member thereof, of a child . . . ." (Italics added.) Here the lewd touching was *with* the body (hand) of the victim.

[5]In *People* v. *Meacham, supra,* the court used a slightly different analysis to reach the same result. The court reasoned that the child victim's touching of his or her own genitalia at the instigation of the defendant was a "constructive touching" and the acts of touching were imputed to the defendant as if the touching had actually been done by his own hands. (152 Cal.App.3d at pp. 153-154.)

touch his own genitals, but the victim did not comply. The appellate court affirmed the conviction even though no personal touching was possible. "It matters not that Imler could not touch his victim. 'The touching necessary to violate Penal Code section 288 may be done by the child victim on its own person providing such touching was at the instigation of a person who had the required specific intent.'" (9 Cal.App.4th at p. 1182, citing *People* v. *Austin, supra,* 111 Cal.App.3d 110, 114.)

It was in an effort to apply this line of cases that the prosecutor in the present case requested the instruction now challenged by defendant: "Where a person instructs a child under the age of 14 to touch such person, and that person has the specific intent to arouse, appeal to or gratify the sexual desires of either party, such person may be guilty of a lewd or lascivious act in violation of section 288a. No touching of the person—child by the person is required." Defendant objected to the instruction below.

■ Defendant correctly points out that the instruction is flawed in that it suggests that the mere instruction to touch, without any actual touching, is sufficient to constitute a lewd or lascivious act. In fact such conduct would at most constitute an attempted violation of Penal Code section 288, subdivision (a) (*People* v. *Imler, supra,* 9 Cal.App.4th 1178) or a violation of Penal Code section 647.6 (molesting a child) (*People* v. *La Fontaine* (1978) 79 Cal.App.3d 176, 185 [144 Cal.Rptr. 729]).

We conclude, however, that the error was harmless under the *Chapman* standard. Angela testified that she touched defendant's penis at defendant's instigation. There is no basis for defendant's surmise that the jury might have disbelieved Angela's testimony about the touching while believing her about the instruction to touch. The district attorney consistently argued that Angela had touched defendant's penis.

As we have already indicated, defendant's argument to the jury was that Angela's testimony was inadequate to prove that *anything* happened in the closet. Under these circumstances, where the jury obviously did believe Angela's testimony, the jury must have found the touching did occur. The erroneous instruction was harmless beyond a reasonable doubt.

II. *Eyewitness Testimony*

In advance of trial defendant requested funds to hire Elizabeth Loftus, an expert on eyewitness identification, to testify as a defense witness. Defense counsel stated that Ms. Loftus was prepared to appear without causing any delay in the trial.

The trial court denied the request for funds, finding that the cost ($10,000) outweighed the value of the testimony. The trial court expressed the view that because Ms. Loftus's testimony would be "generic" the jury instructions on eyewitness identification would suffice.

Defendant raises two arguments concerning the trial court's ruling: (1) the court abused its discretion in refusing to authorize funds for the appointment of an expert witness; and (2) the jury instructions given on eyewitness identification were inadequate. We reject both arguments.

## A. *Instructions*

It is undisputed that expert testimony on the psychological factors affecting the reliability of eyewitness testimony is admissible in a criminal case. (*People* v. *McDonald* (1984) 37 Cal.3d 351 [208 Cal.Rptr. 236, 690 P.2d 709, 46 A.L.R.4th 1011].) The Supreme Court reasoned that information now available about these factors is beyond the common knowledge of the jurors: "It is doubtless true that from personal experience and intuition all jurors know that an eyewitness identification can be mistaken, and also know the more obvious factors that can affect its accuracy, such as lighting, distance, and duration. It appears from the professional literature, however, that other factors bearing on eyewitness identification may be known only to some jurors, or may be imperfectly understood by many, or may be contrary to the intuitive beliefs of most." (*Id.*, at pp. 367-368.)

The Supreme Court has also held that a defendant is entitled to a requested instruction on the factors the jury should consider in evaluating eyewitness identification. (*People* v. *Wright* (1988) 45 Cal.3d 1126, 1138-1144 [248 Cal.Rptr. 600, 755 P.2d 1049]; see also *People* v. *Hall* (1980) 28 Cal.3d 143, 159-160 [167 Cal.Rptr. 844, 616 P.2d 826]; *People* v. *Martinez* (1987) 191 Cal.App.3d 1372, 1382-1383 [237 Cal.Rptr. 219]; *People* v. *Palmer* (1984) 154 Cal.App.3d 79, 89 [203 Cal.Rptr. 474]; *People* v. *West* (1983) 139 Cal.App.3d 606 [189 Cal.Rptr. 36].)

In the present case, the jury was instructed on eyewitness identification factors pursuant to CALJIC No. 2.92, as modified.[6] The jury was also given other instructions pertaining to eyewitness identification. The jurors were told that in determining the credibility of a witness they could consider "the opportunity or the ability of the witness to see or hear or otherwise become aware of any matter about which the witness has testified" and "[t]he ability

[6]The model instruction enumerates certain factors which were not pertinent here—cross-racial identification and the witness's ability to identify other perpetrators. The trial court deleted those irrelevant factors.

of the witness to remember or to communicate any matter about which the witness has testified." (CALJIC No. 2.20) The trial court explained that the prosecution had the burden to prove beyond a reasonable doubt that it was defendant who had committed the crime and if the jurors had doubt, after considering the circumstances of the identification, they were to give defendant the benefit of that doubt and find him not guilty. (CALJIC No. 2.91) Defendant neither objected to the instructions given nor proposed any modifications.

CALJIC No. 2.92, as given to the jury here, reads as follows: "Eyewitness testimony has been received in this trial for the purpose of identifying the defendant as the perpetrator of the crime charged. In determining the weight to be given an eyewitness identification testimony you should consider the believability of the eyewitness, as well as other factors which bear on the accuracy of the identification of this defendant, including but not limited to any of the following: [¶] The opportunity of the witness to observe the alleged criminal act and the perpetrator of the act; the stress, if any, to which the witness was subjected at the time of the observation; the witness' ability following the observation to provide a description of the perpetrator of the act; the extent to which the defendant either fits or does not fit the description of the perpetrator previously given by the witness; the witness' capacity to make an identification; whether the witness was able to identify the alleged perpetrator in a photographic or physical lineup; the period of time between the alleged criminal act and the witness' identification; whether the witness had prior contacts with the alleged perpetrator; the extent to which the witness is either certain or uncertain of the identification; whether the witness' identification is in fact the product of his or her own recollection; any other evidence relating to the witness' ability to make an identification."

■ Defendant complains that CALJIC No. 2.92 was inadequate in that it failed as to at least two of the enumerated factors to explain the effects of those factors on the accuracy of the identification: (1) The instruction informs the jurors to consider the witness's certainty of identification, thereby leading the jurors to believe that the more certain the witness is the more likely the identification is correct. Yet, in *People v. McDonald, supra,* 37 Cal.3d at page 369, the Supreme Court noted that studies have shown a lack of correlation between the degree of confidence an eyewitness expresses in her identification and the accuracy of that identification. (2) The instruction tells the jury to consider the stress to which the witness was subjected at the time of the observation, but there is no consensus on whether stress improves or worsens eyewitness accuracy.

Defendant's arguments were expressly rejected by the Supreme Court in *People v. Wright, supra,* 45 Cal.3d 1126. The *Wright* court held that "a

proper instruction on eyewitness identification factors should focus the jury's attention on facts relevant to its determination of the existence of reasonable doubt regarding identification, by listing, in a neutral manner, the relevant factors supported by the evidence. [¶] The instruction should *not* take a position as to the *impact* of each of the psychological factors listed." (45 Cal.3d at p. 1141, italics in original.) The court expressly approved CALJIC No. 2.92, commenting that CALJIC No. 2.92, with appropriate modifications to take into account the evidence presented at trial, will usually provide sufficient guidance on eyewitness identification factors. (45 Cal.3d at p. 1141.)

The dissent in *Wright* raised concerns identical to those raised by defendant here. The majority, however, rejected the dissent's contention that CALJIC No. 2.92 is defective. "The instruction should *not* take a position as to the *impact* of each of the psychological factors listed. We disagree with the dissent's suggestion that CALJIC No. 2.92 is 'deficient' for failing to explain the effects of the enumerated factors. (*Post*, p. 1157.) An instruction that 'explained' the influence of the various psychological factors would of necessity adopt the views of certain experts and incorporate the results of certain psychological studies while discounting others. It would require the trial judge to endorse, and require the jury to follow, a particular psychological theory relating to the reliability of eyewitness identifications. Such an instruction would improperly invade the domain of the jury, and confuse the roles of expert witnesses and the judge." (45 Cal.3d at p. 1141, italics in original; see also *People* v. *Johnson* (1992) 3 Cal.4th 1183, 1230-1232 [14 Cal.Rptr.2d 702, 842 P.2d 1].)

In the present case, pursuant to the decision in *Wright*, we reject defendant's arguments and find no error in CALJIC No. 2.92.

B.  *Appointment of Expert*

As we have explained, the Supreme Court has held that expert testimony is admissible on the factors that can affect the accuracy of eyewitness identifications. (*People* v. *McDonald, supra,* 37 Cal.3d 351.) The *McDonald* court did not reach the question whether the trial court must authorize public funds for the appointment of such an expert. That issue is before us here.

Evidence Code section 730 authorizes the trial court to appoint an expert to render advice and to testify as a witness, and Evidence Code section 731 and Government Code section 29603 state that the county must pay for those

court-ordered expenses.[7] (*Corenevsky v. Superior Court, supra,* 36 Cal.3d 307, 318-319 [appointment of jury selection expert]; *People v. Hurley* (1979) 95 Cal.App.3d 895, 898 [157 Cal.Rptr. 364] [appointment of expert on eyewitness identification].) ▆ Moreover, the right to effective assistance of counsel entitles indigent defendants to access to public funds for expert services. (*Ake v. Oklahoma* (1985) 470 U.S. 68, 76-85 [84 L.Ed.2d 53, 61-68, 105 S.Ct. 1087]; *Corenevsky v. Superior Court, supra,* 36 Cal.3d at p. 319; *People v. Young* (1987) 189 Cal.App.3d 891, 902 [234 Cal.Rptr. 819].)

However, it is only *necessary* services to which the indigent defendant is entitled, and the burden is on the defendant to show that the expert's services are necessary to his defense. (*Corenevsky v. Superior Court, supra,* 36 Cal.3d at p. 320; *People v. Young, supra,* 189 Cal.App.3d 891, 902; *Puett v. Superior Court* (1979) 96 Cal.App.3d 936, 939 [158 Cal.Rptr. 266]; *People v. Faxel, supra,* 91 Cal.App.3d 327, 330.) As one court explained: "In the nature of things, it may be difficult, in advance of trial, for counsel representing an indigent defendant to demonstrate an undoubted need for such funds. However, he can at least advise the court as to the general lines of inquiry he wishes to pursue, being as specific as possible." (*Puett v. Superior Court, supra,* 96 Cal.App.3d at p. 939; accord, *Corenevsky v. Superior Court, supra,* 36 Cal.3d at p. 320.)

▆ Here, as the Attorney General correctly asserts, defense counsel made only a weak showing that the services of Elizabeth Loftus were necessary. He described her testimony as "generic evidence on the reliability or lack of reliability of eyewitness testimony." Defendant did not enumerate any factors affecting Barbara Buzzard's identification which the jurors might have imperfectly understood or which might have operated contrary to the jurors' intuitive beliefs.

The decision on the need for the appointment of an expert lies within the discretion of the trial court and the trial court's decision will not be set aside absent an abuse of that discretion. (*Corenevsky v. Superior Court, supra,* 36 Cal.3d at p. 321; *People v. Young, supra,* 189 Cal.App.3d at p. 904; *People v. Hurley, supra,* 95 Cal.App.3d at p. 899.)

In *People v. Hurley, supra,* 95 Cal.App.3d 895, 899-900, the reviewing court found no abuse of discretion in the trial court's denial of the defendant's request for appointment of an eyewitness identification expert where,

---

[7]For ancillary defense services other than expert witnesses (e.g., investigators, law clerks), funds may be authorized under Penal Code sections 987.2, 987.8 or 987.9. (*Corenevsky v. Superior Court* (1984) 36 Cal.3d 307, 319-321 [204 Cal.Rptr. 165, 682 P.2d 360]; *Sand v. Superior Court* (1983) 34 Cal.3d 567, 575 [194 Cal.Rptr. 480, 668 P.2d 787]; *People v. Worthy* (1980) 109 Cal.App.3d 514, 519-520 [167 Cal.Rptr. 402]; *People v. Faxel* (1979) 91 Cal.App.3d 327, 330 [154 Cal.Rptr. 132].)

as here, the defendant made no showing of the need for expert testimony. The court reasoned that defense counsel could accomplish the same goal by attacking the witnesses' identification through cross-examination.

*Hurley* was decided before *McDonald* and thus the court in *Hurley* did not consider the assistance an expert witness might offer to the jurors as to factors outside their common knowledge. Nevertheless, we think the same result should be reached here, in this post-*McDonald* case.

The *McDonald* court acknowledged that the decision to admit expert testimony remains a matter within the trial court's discretion (37 Cal.3d at p. 373), but held that the exclusion of such expert testimony would be an abuse of discretion when (1) eyewitness identification is a key element of the prosecution's case and is not substantially corroborated by evidence giving the identification independent reliability and (2) the defendant offers qualified expert testimony on specific psychological factors shown by the record that could have affected the accuracy of the identification but are not likely to be fully known to or understood by the jury. (*Id.*, at p. 377.) In the present case it is undisputed that eyewitness identification was a key element of the prosecution's case. Although Ms. Buzzard's identification was partially corroborated by her identification of defendant's car, that corroboration is not so substantial as to give the identification independent reliability.[8] Yet defendant made no showing as to what specific psychological factors might have affected the accuracy of Ms. Buzzard's identification nor any showing that in the absence of expert testimony the factors specified in CALJIC No. 2.92 were likely to be misunderstood by the jurors.

We must conclude that having failed to demonstrate the admissibility of Ms. Loftus's testimony, defendant failed to show the need for the appointment of Ms. Loftus at public expense. The trial court did not abuse its discretion in denying the request.

III.-V.*

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

---

[8]Ms. Buzzard told the police the license number of the car had a "V" or a "W" in it. In fact, defendant's license number contains the letters "RPL."

*See footnote, *ante*, page 1291.

The judgment of conviction is affirmed but the matter is remanded for determination of defendant's ability to pay a restitution fine and for imposition of a fine consistent with that determination.

Newsom, Acting P. J., and Stein, J., concurred.

A petition for a rehearing was denied August 22, 1994, and appellant's petition for review by the Supreme Court was denied October 27, 1994.