Filed 8/21/14  P. v. Weese CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>SHANE M. WEESE,<br><br>    Defendant and Appellant. | D063852<br><br><br>(Super. Ct. No. SCD242620) |

APPEAL from a judgment of the Superior Court of San Diego County, Michael T. Smyth, Judge.  Affirmed.

Jared G. Coleman, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Anthony DaSilva and Randall D. Einhorn, Deputy Attorneys General, for Plaintiff and Respondent.

A jury found Shane M. Weese guilty of battery with serious bodily injury (Pen. Code, § 243, subd. (d)),[1] and assault by means likely to produce great bodily injury (§ 245, subd. (a)(4)), along with making true findings that Weese personally inflicted great bodily injury (§§ 1192.7 subd. (c)(8), 12022.7, subd. (a)). The trial court sentenced Weese to seven years in prison.

Weese contends that (1) in the jury instruction on eyewitness identification (CALCRIM No. 315), the trial court should have sua sponte deleted language referring to the certainty of the witness's identification; (2) the verdict is not supported by substantial evidence because the victim was too intoxicated to reliably identify Weese as the perpetrator; (3) the trial court violated Weese's federal constitutional rights when it excluded hearsay statements by a witness unavailable to testify at trial; and (4) the trial court erred in not granting a mistrial after a police detective testified during defense counsel's cross-examination that Weese invoked his right to counsel during a police interview. We conclude that Weese's arguments are without merit, and we accordingly affirm the judgment.

I

FACTUAL AND PROCEDURAL BACKGROUND

The victim in this case, Deborah Howard-Mamie, was a 51-year-old homeless woman with an alcohol abuse problem who was living on the streets of downtown San

---

[1]     Unless otherwise indicated, all further statutory references are to the Penal Code.

2

Diego with her husband Rick Mamie.[2] Deborah was found badly injured shortly after 7:00 p.m. on August 13, 2012, in the downtown area, with multiple facial fractures and swelling to her eyes caused by blunt force trauma. Deborah was taken to the hospital, where her blood alcohol level was measured at .427 at 8:28 p.m., and she was determined to have a cerebral contusion. Deborah stayed in the hospital for 10 days recovering from her injuries.

San Diego Police Detective Richard McCoy was assigned to investigate the assault. He first spoke to Deborah in a brief telephone conversation on August 15, 2012. In that conversation, Deborah told Detective McCoy that "Shane" had assaulted her. On August 16, police located Weese on the streets as fitting the description of "Shane" given by Deborah, arrested him for various minor offenses and then questioned him about Deborah's assault. Weese spoke to Detective McCoy for approximately 15 minutes and denied being involved in the assault.

Also on August 16, Detective McCoy met with Deborah in the hospital and showed Deborah a photographic lineup, from which Deborah identified Weese as the perpetrator. Deborah told Detective McCoy that although she did not remember the initial first hit by Weese, she remembered getting hit by him and was "as positive as I can be it was him." Weese was charged with battery with serious bodily injury (§ 243, subd. (d)) and assault by means likely to produce great bodily injury (§ 245, subd. (a)(4)), with

---

[2] To avoid confusion, we will refer to Deborah and Rick by their first names and intend no disrespect by doing so.

3

further allegations that Weese personally inflicted great bodily injury (§§ 1192.7, subd. (c)(8), 12022.7, subd. (a)).

Deborah testified at trial that she first met Weese about 2:00 p.m. on August 13, 2012, while she, Rick and other transients were talking about how to come up with money to buy alcohol for the day. A mutual friend, Rodney, introduced Weese to the group, and Weese, Rodney and Rick went to the drugstore to buy alcohol. A while later, Deborah went to look for Rick and the others, and she found them a short distance away drinking vodka from a 1.75 liter bottle. Rodney was passed out, and Rick was intoxicated to the point that it appeared he had alcohol poisoning. Deborah called 911, and paramedics arrived and took Rick to a detoxification facility.

Deborah testified that after she called 911, she and Weese moved down the street to sit and drink in front of the Salvation Army. While they were drinking, Deborah's friend Laurens Martin came by and joined them. According to both Deborah's and Martin's testimony, Weese made sexual advances to Deborah while the three were sitting together. As Deborah described it, Weese repeatedly put a hand on her leg and said "We're going to fuck" and "I'm going to fuck you." Deborah removed Weese's hand and said "no." Because Deborah was uncomfortable with Weese's behavior, she left and walked a short way to where she kept her possessions and took a nap.

According to Deborah's testimony, she woke up from her nap about an hour later and walked across downtown to a grocery store to use the restroom. While on her way back, she saw Weese and Martin on the street in a different area, still drinking. Martin was very intoxicated and almost passed out. Weese offered Deborah a drink, but she

4

declined because she felt uncomfortable with Weese. Weese grabbed Deborah by both arms and said something sexual. Deborah started to walk away and told Weese to leave her alone. Deborah testified that Weese hit her two times on the left side of the face. She stumbled away and passed out, which she believed was caused by her injuries, not her intoxication.

During Martin's testimony, he remembered drinking with Weese and Deborah and then continuing to drink with Weese in a different location. Martin had an alcoholic blackout after about 5:00 p.m., when he went to line up for dinner at the Salvation Army, and he had no memory of Weese assaulting Deborah.

Weese testified in his own defense and denied ever hitting Deborah or making sexual advances. Weese also testified that he did not remember being with Martin at any time on August 13. Weese stated that because of his intoxication, he had no memory of anything that happened after dusk on August 13, but he believes that he did not injure Deborah while in an alcoholic blackout because he had no blood on his clothes in the morning, his hands did not hurt, and he could not understand what his motive would have been for assaulting Deborah.

The jury convicted Weese on both counts. After granting Weese's motion to strike his prior serious and violent felony and his prior serious felony convictions (§§ 667, subds. (a)(1), (b)-(i), 1170.12, 668), the trial court sentenced Weese to seven years in prison.

5

II

DISCUSSION

A.   *The Trial Court Did Not Err by Not Sua Sponte Modifying the Jury Instruction on Eyewitness Identification*

The trial court instructed the jury with CALCRIM No. 315 on how to evaluate eyewitness testimony.[3] Among the factors that CALCRIM No. 315 instructs the jury to consider in evaluating eyewitness testimony that identifies a defendant is "[h]ow certain was the witness when he or she made an identification?" (CALCRIM No. 315.) Weese contends that without any request from defense counsel, the trial court should have sua sponte modified CALCRIM No. 315 to remove the reference to the witness's certainty because "[d]efinitive scientific research demonstrates that whether a witness is certain is irrelevant to whether an eyewitness identification is accurate." Weese further contends

_____

3     The court instructed with CALCRIM No. 315 as follows:  "You have heard eyewitness testimony identifying the defendant.  As with other witnesses, you must decide whether an eyewitness gave truthful and accurate testimony.  In evaluating identification testimony, consider the following questions:  Did the witness know or have contact with the defendant before the event;  how well could the witness see the perpetrator;  what were the circumstances affecting the witness's ability to observe, such as lighting, weather conditions, obstructions, distance, and duration of observation;  how closely was the witness paying attention;  was the witness under stress when he or she made the observation;  did the witness give a description, and how does that description compare to the defendant;  how much time passed [between] the event and the time when the witness identified the defendant;  was the witness able . . . to pick the perpetrator out of a group;  did the witness ever fail to identify the defendant;  did the witness ever change his or her mind about the identification;  how certain was the witness when he or she made an identification;  are the witness and the defendant of different races;  was the witness able to identify the defendant in a photographic or physical lineup;  were there any other circumstances affecting the witness's ability to make an accurate identification."

6

that because the jury heard testimony that Deborah was certain of her identification of Weese despite her high blood alcohol level during the assault, the purported error in failing to modify CALCRIM No. 315 was prejudicial to Weese.

The Attorney General argues that Weese's objection to CALCRIM No. 315 is forfeited because it was not raised in the trial court.[4] Without deciding whether the argument is forfeited, we will resolve Weese's contention on the merits.

On more than one occasion, our Supreme Court has rejected substantially the same argument that Weese makes here in the context of the predecessor instruction to CALCRIM No. 315, which stated that the jury should consider, among other factors, "[t]he extent to which the witness was either certain or uncertain of the identification." (CALJIC No. 2.92.)

First, in *People v. Wright* (1988) 45 Cal.3d 1126, 1141 (*Wright*), our Supreme Court generally approved all of the various eyewitness identification factors set forth in CALJIC No. 2.92, including certainty of identification, as long as they are set out in a neutral manner and do not take a position on the impact of the factors.

Next, in *People v. Johnson* (1992) 3 Cal.4th 1183, 1231-1232, our Supreme Court rejected the defendant's argument that the portion of CALJIC No. 2.92 referring to

---

[4]     When a defendant fails to object to an instruction in the trial court, an appellate challenge to the instruction is cognizable only if defendant's substantial rights are implicated by the purportedly erroneous instruction. (*People v. Cleveland* (2004) 32 Cal.4th 704, 750; §§ 1259, 1469.) "Substantial rights are affected if the error 'result[s] in a miscarriage of justice, [i.e.,] making it reasonably probable defendant would have obtained a more favorable result in the absence of error.' " (*People v. Elsey* (2000) 81 Cal.App.4th 948, 953, fn. 2.)

7

witness certainty should not have been given because an expert witness testified without contradiction that "a witness's confidence in an identification does not positively correlate with its accuracy." *Johnson* held that the instruction was proper despite the expert witness testimony because it allowed the jury to decide what weight to give to the witness's certainty of identification in light of all of the evidence. (*Johnson*, at pp. 1231-1232.)

Finally, *People v. Ward* (2005) 36 Cal.4th 186 (*Ward*) rejected the defendant's contention that "the trial court erroneously included the 'level of certainty' factor" in CALJIC No. 2.92 and should have modified it with language casting doubt on a witness's subsequent in-court identification of a defendant after an out-of-court identification. (*Ward*, at p. 213.) *Ward* concluded that (1) there was no duty for the trial court to sua sponte modify the instruction to delete the "level of certainty factor"; and (2) that any error would be harmless in light of an expert's testimony that there was no correlation between an eyewitness's level of certainty and the accuracy of his or her identification.[5] (*Ward*, at pp. 213-214.)

Following our Supreme Court, intermediate appellate courts have rejected attempts to challenge CALJIC No. 2.92's reference to eyewitness certainty. In *People v. Gaglione* (1994) 26 Cal.App.4th 1291, 1302-1303, the defendant argued that in light of

---

[5] Here, analogous to the expert testimony in *Ward* discounting the significance of the certainty of a witness's identification, Weese presented expert testimony that Deborah's memory and certainty of Weese hitting her was not dispositive because alcoholics often engage in "confabulation" in which they manufacture memories when they are uncertain of what happened during an episode of extreme intoxication.

8

studies that "have shown a lack of correlation between the degree of confidence an eyewitness expresses in her identification and the accuracy of that identification," it was error for CALJIC No. 2.92 to "inform[] the jurors to consider the witness's certainty of identification, thereby leading the jurors to believe that the more certain the witness is the more likely the identification is correct." Citing *Wright*, *supra*, 45 Cal.3d 1126, *Gaglione* explained that because the instruction does not take a position on the significance of the witness's certainty but merely calls attention to certainty as a factor, the instruction was proper. (*Gaglione*, at p. 1303.) Similarly, *People v. Sullivan* (2007) 151 Cal.App.4th 524, 561, rejected the defendant's argument that the trial court erred by failing to sua sponte delete the reference to witness certainty from CALJIC No. 2.92. Also relying on *Wright*, *Sullivan* adopted *Gaglione*'s reasoning and concluded that a neutral reference to eyewitness certainty was permitted. (*Sullivan*, at pp. 561-562.)

We are persuaded by the case law cited above that Weese's challenge to CALCRIM No. 315 is without merit. Under our Supreme Court's approach, despite the fact that some studies discount the significance of an eyewitness's certainty in assessing the accuracy of an identification, the jury may be instructed to focus on eyewitness certainty if, like CALCRIM No. 315, the instruction is *neutral* and leaves it to the parties to present expert testimony, if desired, on whether a witness's certainty has any relevance in the specific case. (*Wright*, at p. 1143 [the effect of any particular factor "is best left to argument by counsel, cross-examination of the eyewitnesses, and expert testimony where appropriate"].)

9

B.      *Weese's Challenge to the Sufficiency of the Evidence Lacks Merit*

Weese contends that insufficient evidence supports the verdict because Deborah's testimony was the only evidence linking Weese to the assault, and Deborah was too intoxicated during the assault to be able to accurately identify Weese as the perpetrator. According to Weese, based on the fact that Deborah had a blood alcohol level of .427 when she arrived at the hospital, "there is no reasonable hypothesis where [Deborah] was not profoundly impaired by alcohol at the time of the incident" and accordingly unable to make a reliable identification of Weese.[6]

When reviewing a challenge to the sufficiency of the evidence, we "presume[] in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence," and we "examine the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence — evidence that is reasonable, credible and of solid value — such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Kraft* (2000) 23 Cal.4th 978, 1053.) "Although it is the *jury's* duty to acquit a defendant if it finds the circumstantial evidence susceptible of two reasonable interpretations, one of which suggests guilt and

---

[6]     We note that Weese's argument incorporates an erroneous understanding of the facts.  He contends that Deborah's blood alcohol was measured 12 hours after the assault, and that accordingly her blood alcohol level at the time of the assault must have been much higher than .427, because it had dropped for 12 hours.  In fact, all of the evidence shows that Deborah was attacked sometime during the evening of August 13 and then transported to the hospital, where she was received around 7:50 p.m., and her blood sample was drawn at 8:28 p.m.  Accordingly, both the attack and the drawing of the blood took place on the evening of August 13, not 12 hours apart.

the other innocence, it is the *jury*, not the *appellate court* that must be convinced of the defendant's guilt beyond a reasonable doubt." (*Id.* at pp. 1053-1054, italics added.) " 'If the circumstances reasonably justify the verdict of the jury, the opinion of the reviewing court that those circumstances might also reasonably be reconciled with the innocence of the defendant will *not* warrant interference with the determination of the jury.' " (*People v. Love* (1960) 53 Cal.2d 843, 850-851, italics added.)

Weese's argument centers on the testimony of his expert witness, Dr. Clark Smith, describing the effect on memory of a high blood alcohol level. Dr. Smith testified that in light of Deborah's blood alcohol level of .427 when she arrived at the hospital, it was more likely than not that Deborah was in an alcoholic blackout during the assault and actually remembers little or nothing about the assault. According to Dr. Smith, Deborah probably unknowingly manufactured a memory of the assault where none actually existed through a process known as "confabulation." We note, however, that Dr. Smith also acknowledged that Deborah had a high tolerance to alcohol given that she did not die from a blood alcohol level of .427, and that tolerance to alcohol will *decrease* the effect that alcohol has on a person's memory. Further, Dr. Smith testified that although he believed it was more likely than not that Deborah was in an alcoholic blackout during the assault, it was possible that she was not.

In contrast to Dr. Smith's testimony, Deborah testified that she had experienced alcoholic blackouts twice in her life, but not during Weese's assault. Deborah stated that although her memory of some of the details of the assault were fuzzy in the days immediately after it, her memory became more sharp over time. The improvement in

11

Deborah's memory was consistent with the testimony of Deborah's treating doctor, who explained that a victim of a brain contusion will often regain memory as the brain injury heals. That same doctor also testified that a high blood alcohol level does not necessarily mean that a person will lose the ability to recall or form memories. Moreover, Deborah testified that she was certain that it was Weese who attacked her, and she did have a memory of the assault. Indeed, beginning with Deborah's first conversation with Detective McCoy on August 15, 2012, Deborah consistently stated that she was assaulted by Weese.

It is the role of the jury to made a determination on witness credibility. (*People v. Smith* (2005) 37 Cal.4th 733, 739.) Here, exercising that role, the jury could reasonably have rejected Dr. Smith's opinion about Deborah being in an alcoholic blackout and credited Deborah's testimony that she remembered Weese assaulting her. We therefore find no merit to Weese's challenge to the sufficiency of the evidence.

C.    *The Trial Court Did Not Err by Excluding Hearsay Statements by an Unavailable Witness*

Next, we consider Weese's argument that the trial court violated his constitutional right to a fair trial, due process and compulsory process by excluding hearsay statements made by a witness who was not available to testify at trial.

During motions in limine, the parties sought a ruling on the admissibility of hearsay statements made by Richard Purcell, who spoke to a police officer and a firefighter at the scene where Deborah was found injured on the evening of August 13, 2012. Based on the trial court's description of the police officer's report and notes from a

12

defense investigator who interviewed the firefighter, Purcell approached as the firefighter and police officer were on the scene and stated that he had been drinking with Deborah earlier that day. As the trial court recounted the statements, Purcell "described himself as having a couple of sips and leaving because he was already drunk." The trial court explained that there was no information about "the timeframe of when he was supposedly drinking with her. . . . The suggestion was that it was hours earlier, earlier in the day."[7]

Defense counsel sought to have Purcell's hearsay statements admitted as spontaneous declarations under Evidence Code section 1240 or as evidence of third party culpability. The trial court rejected defense counsel's arguments and excluded the evidence. We apply an abuse of discretion standard of review to the trial court's ruling excluding the evidence. (*People v. Prince* (2007) 40 Cal.4th 1179, 1242 (*Prince*).)

Relying upon *Chambers v. Mississippi* (1973) 410 U.S. 284 and *Green v. Georgia* (1979) 442 U.S. 95, Weese contends the trial court was required to admit the evidence of Purcell's hearsay statements pursuant to the constitutional right to a fair trial, due process and compulsory process. According to Weese, the hearsay statements were evidence of Purcell's culpability for the assault on Deborah and thus were so critical to Weese's defense that they were equivalent to the third party confessions that were wrongly excluded from evidence in *Chambers* and *Green*. As we will explain, we disagree.

---

7    The trial court specifically rejected defense counsel's attempt to describe Purcell as having said that he had "just" been drinking with Deborah.

For third party culpability evidence to be admissible under California law, " ' "there must be direct or circumstantial evidence linking the third person to the actual perpetration of the crime." ' " (*Prince*, *supra*, 40 Cal.4th at p. 1242, italics omitted.) Further, "the exclusion of weak and speculative evidence of third party culpability does not infringe on a defendant's constitutional rights." (*People v. Gonzales* (2012) 54 Cal.4th 1234, 1261.)

Here, any inference of third party culpability from Purcell's hearsay statements was extremely weak. Purcell's statements establish nothing more than that he encountered Deborah at some point during the day on which she was assaulted and spent a short time drinking with her. Nothing in those statements constitutes direct or circumstantial evidence that Purcell was the perpetrator of the assault instead of Weese.[8] Accordingly, the trial court did not violate Weese's constitutional rights by excluding Purcell's hearsay statements.

---

[8] Weese also contends that even if not rising to the level of third party culpability evidence, the admission of Purcell's hearsay statement should have been admitted as "*absolutely* critical" to Weese's defense because it cast doubt on Deborah's testimony on the timing of events in that Purcell's statement suggested that Deborah was drinking with him *after* the time that she remembered being attacked by Weese. We reject Weese's argument for two reasons. First, as the trial court described Purcell's statements, Purcell did *not* state that he was drinking with Deborah shortly before she was attacked, but only that he had been drinking with her earlier that day. Second, to the extent Purcell's statement was relevant to Weese's defense, its relevance was to attack Deborah's credibility, as Purcell's statement contradicted Deborah's testimony that on August 13 she drank only with Weese, Martin and Rick. As Purcell's hearsay statement had only minor relevance to Weese's defense, its exclusion did not implicate Weese's due process rights. (*People v. Boyette* (2002) 29 Cal.4th 381, 428 [" 'excluding defense evidence on a minor or subsidiary point does not impair an accused's due process right to present a defense' "].)

D.  *The Trial Court Did Not Err in Denying the Motion for Mistrial Based on a Police Detective's Testimony That Weese Asked for an Attorney During Police Questioning*

The final issue is whether the trial court erred in denying Weese's motion for a mistrial after Detective McCoy mentioned during cross-examination by defense counsel that Weese had terminated his police interview and requested an attorney.

Specifically, during cross-examination defense counsel asked Detective McCoy about a scratch on Weese's nose that appears in photographs taken when Weese was arrested, which Weese had claimed was from a sunburn. Detective McCoy testified that Weese "had mentioned he wanted to talk to an attorney, so I did not have an opportunity to ask him how he received [the scratch]."

In a conversation with counsel at the end of the court day, the trial court brought up Detective McCoy's statement about Weese mentioning he wanted to talk to an attorney, observing that it was "a pretty stupid thing to have said for a 22-year detective," because it improperly informed the jury that Weese had invoked his right to counsel. The next morning, defense counsel moved for a mistrial based on the purportedly incurable prejudice caused by Detective McCoy's statement. Defense counsel renewed the motion after the close of Detective McCoy's testimony

The trial court denied the mistrial motion, explaining that any prejudice could be cured by an admonition and also stating Detective McCoy's subsequent testimony had lessened the prejudice. Specifically, Detective McCoy's subsequent testimony made it clear that although Weese eventually terminated the police interview and invoked his

15

right to counsel, Weese first participated in a 15-minute conversation with Detective McCoy, during which he denied any involvement in the assault on Deborah.

To address any prejudice from Detective McCoy's reference to Weese's invocation of his right to counsel, the trial court gave the following admonition as part of the jury instructions at the close of the evidence: "During trial Detective McCoy testified that Mr. Weese requested an attorney at some point during his interview. Mr. Weese had the absolute right not to discuss the accusations against him, even though, as you heard, Mr. Weese did discuss the accusations with Detective McCoy. Having been advised that he was entitled to have an attorney, Mr. Weese asked for one. The jury is not to consider for any purpose Mr. Weese's request for an attorney made during his interview with Detective McCoy, and you're not to discuss it during your deliberations."

Weese argues that Detective McCoy's testimony about Weese's invocation of the right to counsel violated Weese's constitutional right to due process pursuant to *Doyle v. Ohio* (1976) 426 U.S. 610 (*Doyle*). The Supreme Court in *Doyle* "held that 'the use for impeachment purposes of petitioners' silence, at the time of arrest and after receiving *Miranda* warnings, violated the Due Process Clause of the Fourteenth Amendment.' " (*Greer v. Miller (*1987) 483 U.S. 756, 763 (*Greer*).) Weese contends that the prejudice caused by Detective McCoy's statement irreparably damaged his right to receive a fair trial, and that accordingly, the trial court should have granted a mistrial.

"A trial court should grant a motion for mistrial 'only when " 'a party's chances of receiving a fair trial have been irreparably damaged' " ' [citation], that is, if it is 'apprised of prejudice that it judges incurable by admonition or instruction.' " (*People v. Avila*

16

(2006) 38 Cal.4th 491, 573.) " 'Whether a particular incident is incurably prejudicial is by its nature a speculative matter, and the trial court is vested with considerable discretion in ruling on mistrial motions.' [Citation.] Accordingly, we review a trial court's ruling on a motion for mistrial for abuse of discretion." (*Ibid*.)

Here, the question is whether a mistrial was required because of a violation of *Doyle*. "Under *Doyle* . . . , *a prosecutor* is prohibited from using a defendant's postarrest silence following *Miranda* warnings to impeach his testimony at trial. [Citation.] . . . [Citation.] . . . *Doyle* also prohibits *a prosecutor* from using a defendant's silence against him during direct examination of an interrogating officer, before the defendant testifies in his own behalf." (*People v. Clark* (2011) 52 Cal.4th 856, 959, italics added (*Clark*).) "The United States Supreme Court . . . explained that a *Doyle* violation does not occur unless the prosecutor is *permitted* to use a defendant's postarrest silence against him at trial, and an objection and appropriate instruction to the jury ordinarily ensures that the defendant's silence will not be used for an impermissible purpose." (*Ibid.*, citing *Greer*, *supra*, 483 U.S. at pp. 764-765.)

In this case, there was no violation of *Doyle*. Because Detective McCoy's statement was made during *defense counsel's* cross-examination and never mentioned at all by the prosecutor, this is not a situation in which *Doyle* applies. The prosecutor did not attempt to *use* Weese's postarrest silence against him. It was defense counsel who unintentionally elicited the testimony.

Further, the trial court did not *permit* Detective McCoy's comment on Weese's postarrest silence to come into evidence, as required for *Doyle* to apply. Specifically, the

17

trial court was the one who raised the issue with counsel at a break in testimony, expressly disapproving Detective McCoy's statement. Further, through its admonition that the jury was "not to consider for any purpose Mr. Weese's request for an attorney made during his interview with Detective McCoy," the trial court dispelled any appearance that it was permitting testimony about Weese invoking his right to counsel. (*Greer*, *supra*, 483 U.S. at p. 764 [trial court did not "permit" prosecutor's comment on the defendant's postarrest silence when the court explicitly sustained an objection, no further questioning or argument occurred with respect to the defendant's silence, and the court specifically advised the jury].)

Even were we to conclude that *Doyle* error exists, any error was harmless beyond a reasonable doubt. (*People v. Thomas* (2012) 54 Cal.4th 908, 936 [standard for assessing prejudice from *Doyle* error is the harmless beyond a reasonable doubt standard set forth in the *Chapman v. California* (1967) 386 U.S. 18].) "Testimony that a defendant has invoked his or her right to silence during an interrogation typically poses the risk that the jury will infer the defendant's guilt from such evidence . . ." (*Clark*, *supra*, 52 Cal.4th at p. 959), but in assessing whether specific testimony was prejudicial, we " ' "will consider the extent of comments made by the witness" ' " and " ' "whether an inference of guilt from silence was stressed to the jury" ' " (*People v. Hollinquest* (2010) 190 Cal.App.4th 1534, 1559).

Here, because the jury heard extensive testimony from Detective McCoy that Weese *did* speak with him and *did* deny any involvement in Deborah's assault, and because there was only an isolated mention at trial of Weese's eventual decision to invoke

18

his right to counsel, we conclude beyond a reasonable doubt that Detective McCoy's reference to the fact that Weese eventually invoked his right to counsel did not contribute to the jury's verdict against Weese.

## DISPOSITION

The judgment is affirmed.

                                                        IRION, J.

WE CONCUR:


McDONALD, Acting P. J.


McINTYRE, J.