Filed 9/25/14  P. v. Myers CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>DANIEL LEE MYERS,<br><br>    Defendant and Appellant. | B249928<br><br>(Los Angeles County<br>Super. Ct. No. BA408306) |

 

APPEAL from a judgment of the Superior Court of Los Angeles County. Frederick N. Wapner, Judge.  Affirmed.

Daniel Lee Myers, in pro. per., and Rachel Varnell, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

_____

A jury convicted Daniel Lee Myers of seven counts of second degree burglary and one count of attempted second degree burglary. Defendant broke into classrooms at Marvin Elementary School ("Marvin school") four times between January 25 and February 22, 2013, and stole six Apple iMac computers, along with peripherals. He broke into the computer laboratory at Monsignor Oscar Romero Charter School ("Oscar Romero school") three times between January 31 and February 21, 2013, and stole 10 Apple iMac computers, along with peripherals. He was observed on the closed and locked grounds of the latter school near the computer laboratory on February 25, 2013, and was arrested after walking off the campus in front of a school police undercover vehicle from which officers were conducting surveillance to catch the school burglar. Burglary tools were found resting against an exterior wall of the computer laboratory. The trial court sentenced defendant to an aggregate term of seven years four months in county jail.

Defendant filed a timely appeal. We appointed counsel to represent defendant on appeal. After examination of the record, counsel filed an opening brief raising no issues and asking this court to independently review the record. Defendant filed a supplemental brief raising several issues we briefly address.

1. **Defendant's contentions related to denial of request for DNA testing of jacket**

First, defendant argues the trial court's reversal of its prior ruling appointing an expert to conduct DNA testing on the jacket defendant was wearing at the time of his arrest violated *Brady v. Maryland* (1963) 373 U.S. 83 [83 S.Ct. 1194] (*Brady*) and defendant's rights to a fair trial and to present a defense. The jacket was one aspect of the prosecution's proof that defendant was the serial school burglar because surveillance video from the grounds of Marvin school showed lettering on the back of the burglar's dark jacket and surveillance video from inside the computer laboratory at Oscar Romero school revealed the burglar was wearing a jacket with "Security Unlimited" on the back. The officers who observed defendant and arrested him just after he left the campus on February 25, 2013, testified he was wearing a dark jacket with "Security Unlimited"

written on the back.  They photographed him wearing the jacket after arresting him.  Defendant, who represented himself throughout the course of proceedings in this case, contended the jacket was not his and the police put it on him to frame him.

Defendant repeatedly asked for appointment of a DNA expert.  Neither the court nor a succession of prosecutors who appeared in pretrial proceedings knew whether DNA testing had been conducted on the jacket or any other items recovered.  The trial court eventually granted defendant's motion for appointment of a DNA expert, but at the next pretrial hearing the prosecutor informed the court the prosecution team had not tested the jacket, and would not test it, because defendant was wearing the jacket when arrested and officers photographed him wearing the jacket.  After defendant admitted he had been photographed wearing the jacket, the court reversed its ruling regarding appointment of a DNA expert.

No *Brady* error occurred because the prosecution team did not have exculpatory or potentially exculpatory evidence it failed to disclose.  Defendant sought DNA testing to attempt to develop evidence that did not yet exist.

A defendant seeking appointment of an expert bears the burden of showing the expert's services are necessary to his defense.  (*People v. Gaglione* (1994) 26 Cal.App.4th 1291, 1304.)  A showing that the services of an expert "might turn up something favorable to the defense" is insufficient to demonstrate a reasonable necessity. (*Puett v. Superior Court* (1979) 96 Cal.App.3d 936, 942.)

The extremely speculative value of DNA testing on the jacket placed it into the "might turn up something favorable" category.  Defendant insisted the other clothing he wore beneath the jacket would have prevented his DNA from getting on jacket, but the same argument could be made if he had worn it throughout the attempted burglary.

Assuming, for the sake of argument, the trial court erred by not appointing an expert to test the jacket, any claim of prejudice is extremely speculative.  Absence of defendant's DNA on the jacket would not have established that he did not wear it because he may be a person who does not "shed" cells at a high rate, his other clothing

could have served as a barrier between his body and the jacket (as he argued), and the jacket could have been recently laundered before its recovery. The best possible result for defendant would have been to detect someone else's DNA on the jacket, but that could be explained by defendant borrowing or lending the jacket. In any event, the jacket was only one aspect of proof of defendant's identity as the perpetrator of the charged burglaries. Similarities between the offenses created a strong inference the same person committed all of them, and defendant was observed and caught leaving Oscar Romero school, after leaving burglary tools, including red-handled bolt cutters visible in surveillance videos of some of the other burglaries and the preceding burglary at Oscar Romero school, outside the computer laboratory. All seven burglaries and the attempted burglary occurred within less than one month, all occurred between 2:00 and 5:00 a.m., all involved the theft of iMac computers and peripherals only, the same building at Oscar Romero school and some of the same classrooms at Marvin school were repeatedly burglarized, the burglar cut through chain link fencing to enter the Marvin school campus three times and the Romero campus four times, the burglar pried open security grating on classroom windows to enter classrooms on each occasion, the burglar used trash bags stored outside on school grounds to carry away the computers and peripherals at both schools, and surveillance video depicted the burglar wearing the same or similar attire, including the dark jacket with lettering, a brown scarf covering the lower part of his face, gloves, a dark hat, and white shoes. After defendant's arrest, there were no further burglaries at either school. Given these factors, the prosecution's case that the same person committed all the burglaries was extremely strong, and the circumstances surrounding defendant's capture supported a strong inference he was that person. Thus, the refusal to appoint a DNA expert was harmless.

Defendant also argues his confrontation rights were violated by the trial court's refusal to allow him to cross-examine Detective Seibert about whether "he had submitted a report to the court that DNA was not conducted on the coat/jacket in question." As the trial court correctly ruled, any minimal relevance of such evidence to show Seibert's bias

4

was substantially outweighed by the undue consumption of time and risk of confusing the issues because the court, not Seibert, made the decision not to appoint a defense DNA expert.

## 2.  Remaining contentions

Referring to the preconviction probation report, defendant contends the court sentenced him to a high term based on "a fictitious and inadequate probation" report. However, defendant insisted on being sentenced immediately after the jury returned its verdicts, leaving no time for preparation of a postconviction probation report.  He thereby forfeited any appellate claim regarding the inadequacy of the preliminary report.  In addition, the court explained at sentencing it chose the high term because "[Y]our record is terrible.  And this is the identical conduct for which you were last convicted in '08, and you were also convicted in '03.  [¶]  And you have other—your burglaries go back to 30 years to 1983.  And so that's why you get the high term of the three years.  You kept going back and back and back."

Defendant also contends the court refused his request for appointment of counsel at the restitution hearing.  As support for this claim he cites the following portion of the reporter's transcript:  "I am brought myself as a covert inmate from this case right now, as of right now, your honor.  Okay?  So, therefore, this court ordered to give me an attorney, you never did that.  I want to put that on the record."  This does not reflect a request for counsel, but a reference to a purported prior court order for counsel.  We have found no reference in the appellate record for appointment of counsel.  Defendant may have been referring to appointment of appellate counsel.  When the restitution hearing resumed on another day, the court asked defendant if he wanted an attorney for the remainder of the restitution hearing.  Defendant replied, "No.  I want to finish now."

Finally, defendant contends his confrontation rights were violated by the prosecutor's failure to disclose a prosecution witness's arrest record until after the trial. No prejudice could have resulted, however, because arrests are inadmissible.  (*People v. Lopez* (2005) 129 Cal.App.4th 1508, 1523.)  The witness had not been convicted.

### 3. Conclusion

We have examined the entire record and are satisfied that defendant's attorney has fully complied with her responsibilities and that no arguable issues exist. (*People v. Kelly* (2006) 40 Cal.4th 106, 109–110; *People v. Wende* (1979) 25 Cal.3d 436, 441.)

### DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED

MILLER, J.*

We concur:


ROTHSCHILD, P. J.


JOHNSON, J.

---

**\*** Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.